**H. Russell OLDHAM, Doing Business As H. Russell Oldham DX Service Station, et al., Appellants,**

**v.**

**Cynthia ADKISSON, An Infant, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 5, 1969.

Thomas J. Sabetta, Bartlett, McCarroll & Nunley, Owensboro, for appellants.

Ridley M. Sandidge, Sandidge, Holbrook, Craig & Hager, John B. Anderson, Owensboro, for appellees.

NEIKIRK, Judge.

Appellee Cynthia Adkisson was struck by an automobile being operated by appellant Perry Tichenor on April 26, 1967, at approximately 3:30 p. m. Cynthia was nine years of age. Perry was an employee of appellant H. Russell Oldham, doing business as H. Russell Oldham DX Service Station. The automobile was owned by appellee Mary Wilson. Cynthia sustained serious injuries, and the jury awarded her $52,571, for which judgment was entered. No contention is made that this award was excessive.

Prior to the accident, appellee Mary Wilson brought her automobile to the appellant's DX service station to have the wheels balanced. Her father, Grover Wilson, accompanied her and remained at the station during the time the work was being done on the motor vehicle, and while Mary went shopping. After the repairs were made, appellant Perry Tichenor, accompanied by Grover Wilson, took the automobile on a test drive. As they were returning to the station, the accident occurred.

It is admitted that Perry was operating the Wilson automobile at the time of the collision in the course of his employment by the DX service station.

The case was dismissed during the course of the trial as to appellee Mary Wilson.

This accident occurred on U.S. Highway 431 at a point approximately 800 feet within the city limits of Owensboro, Kentucky. The highway, also known as Frederica Street, had four lanes: two lanes for northbound traffic and two lanes for southbound traffic. Medians separated the northbound and southbound lanes.

Perry was driving north in the traveled portion nearest the median of this four-lane, divided highway at a speed of forty to sixty miles per hour as he approached a point where Fairfax Drive intersected. The approach to the intersection was straight and level and provided an unobstructed view of the intersection for 450 feet or more. There was no other traffic on the highway.

The point at which the car operated by Perry struck Cynthia was near the western extremity of the west lane for northbound traffic and within two feet of the raised median.

Immediately before the accident, a witness, Carolyn Haymon, had approached the intersection from the north and had stopped her car preparatory to turning left across the northbound traffic lanes of the highway to enter Fairfax. She had stopped her car near the median and in a place so constructed as to accommodate southbound vehicles intending to turn left into Fairfax Drive. She saw Cynthia running on Fairfax approaching the highway, and saw her stop at the corner of Fairfax and Frederica. She also saw the car operated by Perry about a block away. Carolyn stated that Cynthia had stopped at the corner as if she were going to wait. Carolyn looked away and did not observe Cynthia further until she heard the brakes of the car operated by Perry being applied. When she heard this, she testified, "I looked around and I seen the little girl running and of course the car hit her."

Perry testified that when he first saw Cynthia she was standing at the curb and he was about 100 feet south of her; that Cynthia looked in his direction; that he "assumed" that she had seen him and that she would wait for him to pass; and that he applied his brakes when he saw her in the highway but could not avoid striking her. No one saw Cynthia leave the curb.

Perry insists that as a matter of law he was not negligent. He relies on Worrix v. Rowe, Ky., 428 S.W.2d 187 (1968). In that case, a three-year-old boy broke away from his mother and darted in front of an oncoming motor vehicle. We said in that case:

" * * * It seems clear that the 'precipitant act' of the child in dashing into

**58**

the path of the car was the sole cause of the accident. No negligent act of omission or commission by appellant appears in the proof. * * *"

We reversed and directed that judgment be entered dismissing the complaint. In the instant case, there is no evidence that Cynthia suddenly darted out into the highway directly into Perry's path. Perry stated that he saw Cynthia stop at the corner and look in his direction. He said he "assumed" that she would wait for him to pass. Witness Carolyn Haymon stated that she saw Cynthia running on Fairfax, saw her stop at the corner, and "I looked back at the traffic." Cynthia did not testify. The evidence shows that Perry had a clear, unobstructed view of the intersection for at least 450 feet. Perry claims that he was only 100 feet from the intersection when he first saw Cynthia. Giving Perry the benefit of the lowest estimate of speed, forty miles per hour, he traveled this distance in less than two seconds. He did not see Cynthia leave the curb. He had not observed the Haymon car that had stopped preparatory to traversing his lane of traffic. It is difficult to believe that Perry was only 100 feet distant when he first saw Cynthia. Believing this, one would be compelled to accept Perry's version that Cynthia stopped at the curb, looked, left the curb, and then ran about twenty-five feet before she was hit. Reasonable minds could differ as to whether all of these events could have been consummated in two seconds or less.

■ The circumstances and the evidence in the instant case imposed a duty on Perry to anticipate that Cynthia might leave the curb and run into the highway. There was no such duty to anticipate in Worrix because there the child was in his mother's custody. Perry should have operated the motor vehicle accordingly. In Thomas v. Gates, Ky., 399 S.W.2d 689 (1966), we said:

" * * * we think the law applicable to the situation in which a small child

darts into the street is this: (1) If the child, before running into the street, was in a position along or near the street where in the exercise of ordinary care the motorist should have seen the child, the motorist has the duty to anticipate that the child may suddenly dart into the street and he must be prepared for that contingency. Potts v. Krey, Ky., 362 S. W.2d 726; Benton v. Parks' Adm'r, Ky., 272 S.W.2d 466; Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897. * * *"

See also George v. Evans, Ky., 405 S.W.2d 285 (1966); Modern Bakery, Inc. v. Brashear, Ky., 405 S.W.2d 742 (1966); and Liberty National Bank & Trust Co. v. Raines, Ky., 416 S.W.2d 719 (1967).

Cynthia did not appear from a concealed position. She was seen by Perry. He took his eyes off of Cynthia. He should have anticipated the tendency of children the age of Cynthia to dart into the highway and should have taken extraordinary precautions.

■ We cannot say that the evidence establishes that as a matter of law Perry was not negligent. The issue of negligence of Perry was submitted on proper and adequate instructions to the jury.

Perry insists that Cynthia was contributorily negligent as a matter of law. In Williamson v. Garland, Ky., 402 S.W.2d 80 (1966), we discarded the rule creating a rebuttable presumption against the capacity for contributory negligence as to children from seven to fourteen years of age. The trial court in the instant case met this standard of instructions as follows:

"It was the duty of the plaintiff, Cynthia Adkisson, at the time and on the occasion sued about, to exercise ordinary care for her own safety at the time and under the circumstances sued about. 'Ordinary care,' as applied to the plaintiff, means that degree of care usually exercised by ordinarily careful and pru-

dent children of the age, intelligence and experience of the said Cynthia Adkisson, under circumstances like or similar to those in this case.

"If the jury believe from the evidence that the plaintiff, Cynthia Adkisson, failed to exercise such duty and she received her injuries because of such failure, if any, then the law is for the defendant and you should so find, but unless you so believe you should find for the plaintiffs."

■ We hold the trial court did not err in submitting the question of contributory negligence under the above instruction to the jury. It was a question for the jury whether the infant, age nine, exercised the degree of care to be expected under all the circumstances from a child of like age, intelligence, and experience.

The trial court instructed the jury as to the duties owed by Perry to Cynthia. Among these duties is found the following:

"(5) To sound his horn when necessary as a warning of the approach of the car."

Perry timely objected to the giving of this instruction and insists that the instruction imposed an unwarranted duty upon him. He cites Fannon v. Hensley, Ky., 320 S. W.2d 614 (1959), in which we reversed the trial court for giving an instruction similar to the one in question. The instant case is distinguishable, in that here we do not know with certainty whether Cynthia actually saw and was aware that Perry was approaching. In Fannon, the plaintiff testified that he was aware of the approach of defendant's automobile. The other cases cited by appellant are distinguishable on the facts.

In Kelly v. Marshall's Adm'r, 274 Ky. 666, 120 S.W.2d 142 (1938), a nine-year-old boy was struck by a taxicab either when running in front of the cab or as he jumped against its side from a moving wagon. The trial court gave an instruc-

tion requiring as one of the duties of the cab driver that he blow his horn. In the Kelly case we said:

"* * * It is the sole province of a jury to pass upon and decide from the facts and circumstances developed in the evidence whether or not a signal as provided by the statute should be given. * * *"

■ In the instant case, Perry admitted that he saw Cynthia on the curb. This was within the city limits and in a residential area of Owensboro. It is possible, if not probable, that had Perry given the warning by blowing his horn, the injuries to Cynthia might have been avoided. It was within the province of the jury to determine that Perry was negligent in failing to sound his horn.

■ The jury, in part of its verdict, used the following language: "$15,000 suffering and pun damages." Perry contends that the word "pun" must be construed as "punitive," thus voiding the verdict. Cynthia maintains that "pun" was merely a bad abbreviation for "pain" and that also it could have the connotation of physical punishment suffered by her. The word "punitive" was never used in the pleadings, evidence, instructions, or oral arguments. It would indeed be unreasonable to assume that the word "pun," as used by the jury in the instant case, meant "punitive." In Buren v. Louisville Ry. Co., 291 Ky. 641, 165 S.W.2d 352 (1942), we said:

"* * * 'Jurors are gathered from every walk of life. Very frequently, perhaps most generally, they are not men of literary learning. Their choice of expressions is very apt to be not exact; their verdicts being frequently ungrammatical and rarely couched in the terminology of the law. Hence courts view the findings of the jury with great leniency, and every reasonable presumption is indulged in aid of a general verdict. The main thing is to get an understanding of what the jury intended. Their in-

tent is to be sought for in the language they used in their verdict, interpreted in the light of the record. Resort may be had to the pleadings or other parts of the record to see what the jury meant by their verdict.' "

 Timely motion should have been made to request the jury to clarify the verdict. Failing to ask for clarification, Perry waived the incomplete, irregular, or ambiguous verdict. Smith v. Crenshaw, Ky., 344 S.W.2d 393 (1961). The holding in Baxter v. Tankersley, Ky., 416 S.W.2d 737 (1967), that a verdict so uncertain or indefinite as not to furnish basis for regular judgment or which is inconsistent or illogical is void is not applicable here, because the verdict in the instant case is logical, consistent, certain, and definite. It was rendered solely in favor of Cynthia and squarely against Perry.

The judgment is affirmed.

All concur.